UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Justin Russell,

      Plaintiff,

          v.

Jason Scott,

      Defendant.

Civil Action No. 5:20–cv–184-gwc-kjd

**<u>OPINION AND ORDER</u>**
(Doc. 24)

At the time relevant to the allegations in his Complaint, Plaintiff Justin Russell was a pretrial detainee at the Southern State Correctional Facility (SSCF) in Springfield, Vermont.[1]  He brings this lawsuit against Defendant Jason Scott, a correctional officer at SSCF during the relevant period.  According to Plaintiff, Defendant sexually assaulted him while Defendant was overseeing a medication call at SSCF.  Plaintiff further alleges that "[i]n an effort to cover up his actions, [Corrections Officer] Scott charged Mr. Russell with a major disciplinary infraction for diverting medication."  (Doc. 1 at 3, ¶ 13.)  Plaintiff sues Defendant under 42 U.S.C. § 1983 for violation of his rights under the Eighth and Fourteenth Amendments to the United States Constitution.  (Doc. 1 at 5–6.)  He also brings state-law claims against Defendant alleging assault, intentional infliction of emotional distress, and malicious prosecution.  (*Id.* at 4–5.)

---

[1]  Although the Complaint states that Plaintiff "has been released from [Department of Corrections] custody" (Doc. 1 at 1, ¶ 4), the Department of Corrections states that Plaintiff "remains in the care and custody of the State of Vermont, specifically the Burlington Department of Probation and Parole" (Doc. 26 at 2).

Plaintiff has filed a Motion to Compel Compliance with Subpoena *Duces Tecum*, requesting that the Court order James Baker, former Commissioner of the Vermont Department of Corrections (DOC), to produce the documents listed in the Subpoena and award attorney's fees to Plaintiff.  (Doc. 24.)  For the reasons explained below, the Court grants the Motion in part and denies the Motion in part.

### Background Facts and Procedure

On April 16, 2021, Plaintiff served a Subpoena on former DOC Commissioner Baker, seeking the following categories of documents:

1. All documents contained in Plaintiff's "core file," including but not limited to case notes, incident reports, disciplinary reports, grievances, and correspondence, as maintained by the DOC.

2. All documents generated in connection with any Prison Rape Elimination Act investigation that the DOC undertook in response to complaints raised against Defendant.

3. A complete copy of Plaintiff's medical records from January 1, 2015 to the date of the Subpoena.

4. A complete copy of Defendant's personnel file, including any documents generated in connection with employee disciplinary proceedings.

5. Copies of any inmate grievances against Defendant.

6. Copies of any nonprivileged documents concerning either Plaintiff or Defendant.

(Doc. 24-2.)

In an April 20, 2021 letter, DOC counsel objected to the production of any records that may be responsive to the Subpoena under Federal Rule of Civil Procedure 45.  (Doc. 24-3.) On July 12, 2021, Plaintiff's counsel responded to the objections, provided a release from Plaintiff

authorizing production of his medical records and DOC file, and offered to enter into a confidentiality stipulation to protect information about third parties. (Doc. 24-4.) Thereafter, DOC counsel advised Plaintiff's counsel that no responsive documents would be provided (Doc. 24-6), prompting Plaintiff to file the pending Motion to Compel on October 5, 2021 (Doc. 24). In the Motion, Plaintiff argues that the DOC Commissioner's failure to produce documents in response to the Subpoena is in "violation of his obligations under [Federal Rule of Civil Procedure] 45." (*Id.* at 3.)

Defendant and the DOC have filed separate Oppositions to the Motion (Docs. 26, 27), and Plaintiff has filed a Reply (Doc. 29). In its Opposition, the DOC argues that Plaintiff's discovery requests "should be limited to items allowed by Vermont Law, Federal Law[,] and [DOC] policies/directives" (Doc. 26 at 1), and that the Motion to Compel should be denied because Plaintiff's interests in litigating this case, which involves "a single incident" occurring "on a single day," "should be balanced with [the DOC's] duty to protect the safety and security of the incarcerated population in general for the State of Vermont and the employees who provide their supervision" (*id.* at 3). (*See id.* (noting the DOC's "ongoing duty to protect the safety of all individuals entrusted to it[]s care after sentencing in the Vermont judicial system and continuing after release into the community until their supervision is complete").) In his Opposition, Defendant opposes solely the production of his personnel file, claiming that he has already provided interrogatory responses that establish there is no discoverable information in the file because "he has never been disciplined for any type of behavior that is at all like the allegations in Plaintiff's [C]omplaint." (Doc. 27 at 2.)

In his Reply, Plaintiff states that, in late October 2021, he received his DOC medical records dating from January 2019 through March 2020, which renders the Motion to Compel moot as to the request for medical records pertaining to that period. (Doc. 29 at 1.) The DOC, however,

continues to object to producing the remainder of Plaintiff's medical records as well as to the other

categories of documents requested in the subject Subpoena.  (*Id.*)  Plaintiff asserts that any

confidentiality and privacy concerns regarding production of the requested documents may be

addressed by redaction of sensitive or privileged information, submission under the terms of a

confidentiality agreement, or production for attorney's eyes only.  (*Id.* at 2.)

<u>**Analysis**</u>

**I.**   **Legal Standard**

Under Federal Rule of Civil Procedure 26(b)(1), "discovery may be had regarding any

matter relevant to the subject matter involved in the action."  *Inmates of Unit 14 v. Rebideau*,

102 F.R.D. 122, 127 (N.D.N.Y. 1984).  Specifically, Rule 26(b)(1) provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the importance
> of the discovery in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit.

The Rule further states that "[i]nformation within this scope of discovery need not be admissible

in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).  This provision is "an explicit

recognition that the question of relevancy is to be more loosely construed at the discovery stage

than at the trial."  *Inmates of Unit 14*, 102 F.R.D. at 127; *see Engl v. Aetna Life Ins. Co.*, 139 F.2d

469, 472 (2d Cir. 1943) (holding that documents may be discovered "not merely for the purpose of

producing evidence to be used at the trial, but also for discovery of evidence, indeed, for leads as

to where evidence may be located").  In general, "[d]iscovery rules are to be accorded a broad and

liberal treatment . . . to effectuate their purpose that civil trials in the federal courts no longer need

be carried on in the dark."  *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003)

(internal quotation marks omitted).

"A district court has wide latitude to determine the scope of discovery," and the Second Circuit "ordinarily defer[s] to the discretion of district courts regarding discovery matters," finding that a district court abuses its discretion "only when the discovery is so limited as to affect a party's substantial rights." *United States v. Rowe*, 858 F. App'x 405, 408 (2d Cir. 2021) (internal quotation marks omitted); *see United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991) ("[W]e may not disturb [a district court's denial of a motion to compel discovery] unless there is a clear showing of abuse of discretion."). Federal Rule of Civil Procedure 26(b)(2)(C) provides that a district court may limit discovery if, among other things, it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the [burden or expense of the] proposed discovery [outweighs its likely benefit].

*See In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008).

As with all discovery, "[f]ederal district courts have broad discretion in deciding motions to compel." *Jenkins v. Miller*, Case No. 2:12-cv-184, 2021 WL 1115928, at *1 (D. Vt. Mar. 24, 2021) (citing *Grant Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 488 (2d Cir. 1999)). Specifically, "the district court has broad discretion to limit [the requested] discovery in a prudential and proportionate way." *Id.* (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012)). On a motion to compel, "it is incumbent upon the moving party to provide the necessary linkage between the discovery sought and the claims brought and/or defenses asserted in the case." *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, No. CV 09-601(ADS)(AKT), 2009 WL 3757054, at *2 (E.D.N.Y. Nov. 9, 2009). And it is the discovering party who "has the burden of demonstrating that the information sought is relevant to the subject matter of the pending action." *United States v. Int'l Bus. Machines Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y. 1974); *see Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).

5

The party opposing discovery on the grounds of relevancy also has a burden: to demonstrate that "the requested documents either do not come within the broad scope of relevance defined pursuant to [Rule] 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by disclosure would outweigh the ordinary presumption in favor of broad disclosure." *Du Grenier v. Encompass Ins. Co.*, Case No. 2:16-cv-281 2018 WL 4692354, at *4 (quoting *Go v. Rockefeller Univ.*, 280 F.R.D. 165, 176 (S.D.N.Y. 2012)); *see Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of New York*, 284 F.R.D. 132, 135 (S.D.N.Y. 2012) ("Once relevance has been shown, it is up to the responding party to justify curtailing discovery." (internal quotation marks omitted)).

"Federal policy favors broad discovery in civil rights actions." *Inmates of Unit 14*, 102 F.R.D. at 128 (citing *Kinoy v. Mitchell*, 67 F.R.D. 1, 12 (S.D.N.Y. 1975)). "It has been strongly stated that suits under 42 U.S.C. § 1983 should be resolved by a determination of the truth rather than a determination that the truth shall remain hidden." *Id.*; *see Marshall v. New York City Transit Auth.*, No. 84 CIV. 1033 (LBS), 1984 WL 380, at *5 (S.D.N.Y. May 24, 1984) ("[T]he policy of full disclosure is particularly compelling in a case . . . where the plaintiff is alleging violation of his constitutional rights and seeking relief under the Civil Rights Act."). In deciding discovery disputes, courts should give particular consideration to the evidence needed to support each party's claims and defenses. *Inmates of Unit 14*, 102 F.R.D. at 128; *see Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

## II.     Documents Requested in the Subpoena

### A.     Documents Contained in Plaintiff's "Core File"

Plaintiff seeks all documents contained in his "core file" with the DOC, including case notes, incident reports, disciplinary reports, grievances, and correspondence. (Doc. 24 at 3–4.) On October 18, 2021, the DOC stated in its Opposition to Plaintiff's Motion to Compel: "[N]ow

6

that Plaintiff has waived his confidentiality and provided a release, [the DOC] *may provide* the items in [Plaintiff's] inmate file *that are authorized by Directive 251.01*." (Doc. 26 at 8 (emphases added).) In his October 31, 2021 Reply, however, Plaintiff advised that the DOC had not yet produced "any portion" of Plaintiff's "core file." (Doc. 29 at 1 n.1.) It is unclear why the DOC had not yet provided at least those documents in Plaintiff's core file that it believes "are authorized by" Directive 251.01 as of the date of the filing of its Opposition. Moreover, the DOC apparently continues to refuse to produce Plaintiff's entire "core file" on the grounds that it "could include items of security assessments . . . or other information that may compromise the health, safety, security[,] or rehabilitation of the offender, inmate, or any other person." (Doc. 26 at 8–9; *see id.* at 8 (DOC stating that "[t]he remainder of the file, *if any*, could include [sensitive or private prison/inmate information]").) It is unclear what portion of Plaintiff's "core file," if any, the DOC is currently withholding.

The DOC's regulations governing offender/inmate records provide that records of offenders/inmates "are exempt from public inspection and copying . . . and shall be kept confidential." V.C.R. 13 130 036; 28 V.S.A. § 107(b). When an offender or inmate seeks DOC records "relating to him or her in litigation," however, the regulations provide that the DOC "[s]hall release or permit inspection of such records . . . *in accordance with discovery rules.*" *Id.* (emphasis added). Therefore, an inmate engaged in litigation is entitled to his DOC records according to the rules of discovery.

In his Initial Disclosures to Plaintiff, Defendant has listed "DOC records including records contained in Plaintiff's 'core file'" as "[d]ocuments related to [D]efendant's defenses." (Doc. 24-8 at 3.) Moreover, according to the Complaint, the case is about an alleged incident involving Plaintiff and Defendant that occurred at the SSCF when Plaintiff was in the custody of the DOC,

and certain related events occurring at the SSCF in the months following the initial incident.  (*See* Doc. 1.)  Therefore, portions of Plaintiff's "core file" are relevant to the case.

The DOC has not provided a compelling reason to withhold Plaintiff's "core file" from him.  The DOC's general claim of harm, i.e., that "information not specific to the alleged incident could jeopardize the personnel and other supervisees of the [DOC]" (Doc. 26 at 9), is insufficient to overcome Plaintiff's entitlement to discover relevant information in this case.  In particular, the DOC does not specifically describe how disclosure of Plaintiff's core file in the context of this case would be harmful to DOC personnel and supervisees.

It appears likely that documents in that file would provide information related to the events at issue in this case.  Nonetheless, Plaintiff has not shown that his entire "core file," unlimited as to time, is relevant to this suit, which almost entirely involves an incident that occurred on one day, February 11, 2019.

Although Plaintiff disputes the DOC's representations as to the dates he was in DOC custody, the DOC states that Plaintiff was not in its custody "in the years 2015, 2016, 2017[,] or all of 2018." (Doc. 26 at 8.)  The DOC is thus ORDERED to produce to Plaintiff those documents contained in Plaintiff's "core file" dating from January 1, 2019 through January 1, 2021.

### B.      Documents Generated in Connection with PREA Investigations of Defendant

Plaintiff also seeks all documents generated in connection with any Prison Rape Elimination Act (PREA) investigation that the DOC has undertaken in response to complaints against Defendant.  (Doc. 24 at 4–6.)  The DOC has not produced these documents on the grounds that they are confidential under DOC regulations and 28 V.S.A. § 107(b). (*See* Doc. 26 at 6.)  The cited statute provides:

> Offender and inmate records are exempt from public inspection and copying under the Public Records Act and shall be kept confidential, except that the Department:

. . .

(2) Shall release or permit inspection of such records pursuant to a court order for good cause shown or, *in the case of an offender or inmate seeking records relating to him or her in litigation, in accordance with discovery rules.*

28 V.S.A. § 107(b) (emphasis added). As noted above, under this statute and its implementing regulation, an offender such as Russell who is seeking records relating to himself in litigation is entitled to those records according to the rules of discovery. The DOC also argues that it must consider "the privileges afforded other victims unrelated to this single incident by 12 V.S.A. § 1614(b)." (Doc. 26 at 7.) The cited statute provides:

A victim receiving direct services from a crisis worker has the privilege to refuse to disclose and to prevent any other person from disclosing a confidential communication made by the victim to the crisis worker, including any record made in the course of providing support, counseling, or assistance to the victim.

12 V.S.A. § 1614(b).

As an initial matter, "in federal civil rights cases . . . , whether a record is privileged is dictated by federal law, not state law." *Rossy v. City of Buffalo*, No. 17-CV-937-WMS, 2020 WL 2833001, at *3 (W.D.N.Y. June 1, 2020). Although Plaintiff's Complaint alleges state-law claims pendent to the § 1983 claim, the principle remains the same. *See von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987) ("The Senate Report which accompanied Rule 501 stated that '[i]t is also intended that the Federal Law of privileges should be applied with respect to pendent State law claims when they arise in a Federal question case.' The instant case is a federal question case by virtue of the RICO claim; and pendent state law claims arise in the case. Accordingly, we hold that the federal law of privilege controls the question whether the privileges asserted . . . should be recognized." (quoting S. Rep. No. 1277, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. Code Cong. & Ad. News 7051, 7059 n.16)); *United States v. One Parcel of Prop. Located at 31-33 York St., Hartford, Conn.*, 930 F.2d 139, 141 (2d Cir. 1991) ("While as a matter

of comity federal courts accord deference to state-created privileges, such privileges are construed narrowly and must yield when outweighed by a federal interest in presenting relevant information to a trier of fact." (citations omitted)); *Simuro v. Shedd*, No. 2:13-cv-30, 2014 WL 5776149, at *2 (D. Vt. Nov. 6, 2014) (noting holding in *von Bulow* that "federal common law applies to questions of privilege in cases brought under federal law with supplemental state law claims"); *see Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992) ("Rule 501 is not clear as to which rule of decision should be followed when the federal and state laws of privilege are in conflict[,] . . . [but] [c]ourts that have confronted this issue in the context of the discoverability of evidence have uniformly held that the federal law of privilege governs even where the evidence sought might be relevant to a pendent state claim." (citation omitted)); *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988) ("Rather than apply state privilege law to a federal civil rights claim, the magistrate must vindicate the purposes of federal discovery and privilege law.").

As discussed above, "[d]iscovery in civil litigation pending in a federal court is governed by the Federal Rules of Civil Procedure." *von Bulow by Auersperg*, 811 F.2d at 141.  This is not to say that federal civil rights plaintiffs may have "free and unfettered discovery of police personnel documents," *Rossy*, 2020 WL 2833001, at *3 (internal quotation marks omitted), but rather that the court "must balance the interests favoring and opposing confidentiality in the discovery phase of the litigation," *King*, 121 F.R.D. at 187.

Documents related to a PREA investigation undertaken by the DOC in response to Plaintiff's complaints against Defendant based on the facts at issue in this litigation are highly relevant to this case.  Thus, these documents should be produced.  Regarding documents related to any other PREA investigation undertaken by the DOC in response to complaints by other inmates against Defendant, those documents are also relevant to this case because if an inmate other than Plaintiff has accused Defendant of sexual assault, that could support Plaintiff's allegation that

Defendant "had a history of sexual abuse against other inmates, and engaged in a pattern and practice of abusing inmates under his supervision."  (Doc. 1 at 3, ¶ 15.)  *See, e.g.*, *Cox v. McClellan*, 174 F.R.D. 32, 34 (W.D.N.Y. 1997) ("In civil rights actions, courts have permitted discovery of prior similar complaints or incidents regardless of the outcome of those complaints." (emphasis omitted)); *Henry v. Hess*, No. 11 Civ. 2707(KMK)(GAY), 2012 WL 4856486, at *1 (S.D.N.Y. Oct. 12, 2012); *Sowell v. Chappius*, No. 07-CV-6355, 2010 WL 1404004, at *1 (W.D.N.Y. Mar. 31, 2010).[2]

Therefore, the DOC is ORDERED to produce the requested documents, subject to a protective order to protect the privacy and confidentiality interests noted in the DOC's Opposition. Although recognizing the DOC's various privilege claims, there is insufficient justification for application of any privilege to prevent discovery here.  *See von Bulow*, 811 F.2d at 144 ("It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those

---

[2]  Some courts have limited production to grievances or complaints that were found to be substantiated or resulted in personnel action.  *See, e.g.*, *Mitchell v. Whitenight*, No. 11–CV–0684S(Sr), 2013 WL 5936978, at *2 (W.D.N.Y. Nov. 4, 2013) (noting that production of documents showing discipline of local police officers for excessive use of force is generally required, but that records related to "unsubstantiated claims of excessive force are unlikely to lead to admissible evidence" and thus are generally not required to be produced); *Hart v. Goord*, No. 08CV681, 2010 WL 1644242, at *2 (W.D.N.Y. Apr. 22, 2010) ("The probative value of a grievance against a correctional officer, which was found to be unsubstantiated during the grievance process, is quite limited."); *Wright v. Goord*, No. 04-CV-6003L, 2008 WL 2788287, at *3 (W.D.N.Y. July 15, 2008) (defendants directed to "conduct a search of the personnel files for the named defendant[] [correctional officers] and to produce . . . copies of any documents relating to disciplinary action taken against such defendants based upon the use of excessive force"; otherwise, discovery request found overly broad and unduly burdensome); *but see Gross v. Lunduski*, 304 F.R.D. 136, 146 (W.D.N.Y. 2014) ("[C]aselaw in this district, as well as other districts within this circuit, do not predominantly hold that only 'substantiated' complaints of similar misconduct, specifically . . . excessive force complaints against [d]efendant, are subject to discovery[;] . . . [f]urther, because those cases relied upon by [d]efendant supporting such a proposition represent an overly restrictive view of the discoverability of evidence of prior similar complaints contrary to the principle of liberal discovery as embodied in the Federal Rules . . . , particularly in civil rights cases, the undersigned declines to follow them; rather, the court adheres to those cases which hold that even unsubstantiated complaints are useful to resourceful counsel as potential leads to other evidence relevant to the issues of intent or other facts in issue, and therefore subject to production." (internal citations and quotation marks omitted) (collecting cases)). The DOC has not raised this distinction between substantiated and unsubstantiated complaints.  The Court does not find it unduly burdensome to require the DOC to produce the requested PREA-investigation documents.  *See, e.g.*, *Doe v. MacLeod*, No. 3:18-cv-3191, 2019 WL 2601338, at *4 (C.D. Ill. June 25, 2019) (finding that it "would not be unduly burdensome" to require the Illinois Department of Corrections (IDOC) "to identify documents responsive to [a request to produce IDOC investigatory files of allegations of sexual misconduct committed by IDOC employees against inmates] by reviewing the data collected and maintained as required by [the] PREA").

facts that are the essential elements of the privileged relationship." (internal quotation marks omitted)).  For the DOC to support imposition of a privilege in this context, it must demonstrate, "through competent declarations," "*what interests* [of law enforcement or privacy] would be harmed, *how* disclosure under a protective order would cause the harm, and *how much* harm there would be."  *King*, 121 F.R.D. at 189 (alteration in original) (internal quotation marks omitted). Without a demonstration of these specific facts, the Court "cannot conduct a meaningful balancing analysis."  *Id.* (internal quotation marks omitted).

      **C.**     **Plaintiff's Medical Records**

Plaintiff next seeks from the DOC a complete copy of his own medical records dating from January 1, 2015 to the present (Doc. 24 at 6), arguing that he "is entitled to production of his own medical records regardless of whether they have any relevance to this litigation" (Doc. 29 at 3 n.2).  The DOC has apparently produced to Plaintiff copies of the medical records from the January 2019 through March 2020 timeframe.  (*Id.* at 1.)  Plaintiff asks the Court to order the DOC to produce *all* the records, unrestricted by time.  The DOC does not explain why it has limited the production to the time period noted above, but nevertheless requests "that the Court limit the medical records to January 1, 2019 to December 31, 2019."  (Doc. 26 at 8.)  Other than asserting a general concern that production of Plaintiff's medical records "could jeopardize the personnel and other supervisees of the [DOC]" (*id.* at 9), the DOC does not explain why it is withholding Plaintiff's medical records.

The Court ORDERS the DOC to produce to Plaintiff copies of his DOC medical records dating from January 1, 2015 through the date of the Subpoena.  *See, e.g.*, *Cole v. Goord*, No. 04CIV8906GELHBP, 2006 WL 3378145, at *3 (S.D.N.Y. Nov. 16, 2006) ("Because plaintiff should have access to his own medical records, defendants are ordered to produce plaintiff's inmate medical records relevant to the pending actions.").

D.      **Defendant's Personnel File**

Plaintiff asks the Court to compel the DOC to produce a complete copy of Defendant's personnel file, including any documents generated in connection with employee disciplinary proceedings.  (Doc. 24 at 7–8.)  Both Defendant and the DOC object to this request.  Defendant argues that his interrogatory responses establish that there is no discoverable information in his personnel file because he has never been disciplined for any type of behavior that is similar to the conduct alleged in the Complaint.  (Doc. 27 at 2.)  Moreover, Defendant claims the Subpoena should be limited to "factually similar incidents" and to "a specific period."  (*Id.* at 3.)  Finally, Defendant claims that the one instance of another inmate accusing him of sexual assault is part of the public record because the inmate filed suit in state court.  (*Id.*)  The DOC argues that the request for Defendant's entire personnel file is too broad and unlikely to lead to the discovery of relevant information, and urges the Court to consider "the security and safety of both Defendant and other incarcerated individuals."  (Doc. 26 at 4.)  The DOC explains: "Plaintiff remains on supervision by [the] DOC and has a high probability of remaining in contact with other incarcerated individuals that remain in a facility and the information could easily be misused or exploited."  (*Id.*)

The DOC further asserts that it "has a privilege as to the disclosure of [Defendant's] personnel file pursuant to 12 V.S.A. § 1691a and 1 V.S.A. § 317(c)(7)."  (*Id.* at 6.)  As noted above, in a case involving both federal and state-law claims, state law does not direct the determination of whether a privilege applies.  *See von Bulow by Auersperg*, 811 F.2d at 141.  In any event, the cited state statutes do not prohibit the disclosures at issue in this case.  With respect to Vermont's Access to Public Records Act, the law exempts from public inspection "[p]ersonal documents relating to an individual, including information in any files maintained to hire, evaluate, promote, or discipline any employee of a public agency."  1 V.S.A. § 317(c)(7).  This

privilege against disclosure also applies to "[r]ecords that are relevant to litigation to which the public agency is a party of record, provided all such matters shall be available to the public after ruled discoverable by the court before which the litigation is pending." *Id*. § 317(c)(14). Therefore, by its terms, the statute does not prohibit the disclosure of an agency employee's personnel file as a result of a discovery ruling in litigation.  As the Vermont Supreme Court has explained, "[a] state statutory scheme like Vermont's Access to Public Records Act is not intended as a device to delay ongoing litigation . . . ." *Wesco, Inc. v. Sorrell*, 2004 VT 102, ¶ 22, 177 Vt. 287, 865 A.2d 350 (internal quotation marks omitted);[3] *see Shlansky v. City of Burlington*, 2010 VT 90, ¶ 8, 188 Vt. 470, 13 A.3d 1075 (noting that "Vermont's Public Records Act is not meant to allow an end-run around discovery rules or determinations").

Regarding 12 V.S.A. § 1691a—which sets forth the procedure under state law for discovery of employee personnel records in civil actions—this Court recently noted that the statute, by its own terms, "applies only to civil actions commenced pursuant to Rule 3 of the Vermont Rules of Civil Procedure, and not to actions filed in federal court pursuant to the Federal Rules of Civil Procedure." *Cameron v. Menard*, Civil Action No. 5:18-cv-204-gwc-kjd, 2021 WL 2805603, at *4 (D. Vt. July 6, 2021) (internal quotation marks omitted); *see Turner v. Vermont Ctr. for the Deaf & Hard of Hearing, Inc.*, Case No. 2:02-CV-251, 2003 WL 27380992, at *5 (D. Vt. Oct. 1, 2003) ("Nothing in § 1691a creates a privilege for discovery purposes[;] . . . the statute merely creates a process for considering any objections an employee might have to production of the files.").

---

[3] As *Wesco* explained, "[e]xempting disclosure of documents relevant to ongoing litigation outside the discovery process prevents the issuance of conflicting and inconsistent judgments in competing courts.  Discovery decisions should be reserved for the trial court before which the litigation is pending, rather than getting a second opinion by shifting them to the superior court in the form of a Public Records Act request." *Id.* ¶ 21.

14

It is well settled that the personnel files of defendant correctional officers may be the proper subject of discovery in civil rights cases against the officers, at least to the extent that those files contain complaints of misconduct and disciplinary records filed against the officers.  *See, e.g.*, *Gross v. Lunduski*, 304 F.R.D. 136, 144–49 (W.D.N.Y. 2014) (collecting cases).  However, courts have tailored discovery of defendant correctional officers' personnel files to include only material that is relevant to the case, such as complaints, performance reviews, or disciplinary reports involving complaints similar to those alleged in the case under review.  *See, e.g.*, *id.* at 145 ("In civil rights actions, courts have permitted discovery of prior similar complaints or incidents regardless of the outcome of those complaints." (internal quotation marks omitted)); *Henry*, 2012 WL 4856486, at *1 (holding that complaints of misconduct and disciplinary records that were filed against a defendant police officer "would be subject to discovery," whether substantiated or unsubstantiated, so long as they are "similar to the allegations in the civil action against [the officer]"); *Sowell*, 2010 WL 1404004, at *1 (prior complaints made against defendants are discoverable in § 1983 civil rights actions so long as they are similar to the constitutional violations alleged in the complaint or are relevant to defendant's truth or veracity); *Ferguson v. City of New York*, No. 97 Civ.1169(SAS)(THK), 1997 WL 580689, at *1–2 (S.D.N.Y. Sept. 18, 1997) (portions of personnel records that contain "performance reviews and/or disciplinary records" of defendant correctional officer were subject to discovery in excessive-use-of-force case); *Cincotta v. City of New York*, No. 83 Civ. 7506 (KTD), 1984 WL 1210, at *3 (S.D.N.Y. Nov. 14, 1984) (in civil rights action against police officer and city, alleging that officer assaulted and unjustifiably arrested plaintiff, limited production of personnel files of defendant officer allowed); *but see Crenshaw v. Herbert*, 409 F. App'x 428, 430 (2d Cir. 2011) (affirming district court ruling denying discovery of defendant police officer's personnel records based on defendant's affirmation that his personnel file contained no relevant disciplinary records).

15

Courts have limited the discovery of a defendant correctional officer's personnel file to a defined period of time and required that the parties enter into a protective order before allowing the discovery.  *See, e.g.*, *Smith v. Goord*, 222 F.R.D. 238, 239 (N.D.N.Y. 2004) (ordering production of personnel files including discipline records of defendant police officers and noting that "concerns associated with disclosure of th[e] documents can be addressed adequately through the entry of an appropriate protective order"); *Ismail v. Cohen*, No. 85 CIV. 0121(PKL), 1986 WL 2186, at *3 (S.D.N.Y. Feb. 10, 1986) (allowing discovery of defendant police officer's psychiatric records "subject to a protective orde[r] that will give appropriate regard to the privacy and dignity of the individuals affected" (alteration in original) (internal quotation marks omitted)).

Documents from Defendant's personnel file could be relevant to Plaintiff's claims against Defendant in this case.  Therefore, balancing Plaintiff's right to discover relevant evidence against the DOC's legitimate concerns for institutional security,[4] the DOC's policies regarding confidentiality of inmate records, and Defendant's right to privacy; the Court ORDERS the DOC to produce those documents from Defendant's personnel file that relate to any complaints, disciplinary records, or other documents dealing with allegations of assault or sexual assault by Defendant dating from January 1, 2019 through January 1, 2021, subject to a protective order, as described below.  Although Defendant has submitted interrogatory responses stating that he "ha[s] never been subject to disciplinary action for physical or sexual assault, conducting an inappropriate pat down, or inappropriately charging an inmate with a disciplinary infraction," and that only one inmate other than Plaintiff "[has] made an allegation of sexual assault against [him] when [he] conducted a pat down for contraband" (Doc. 27 at 2), the file may nevertheless contain

---

[4] As one court has observed, disclosure of personnel records of correctional officers to a prisoner could "jeopardize institutional safety and security" and "lead to misuse of that information by the inmate," including using a correctional officer's disciplinary history "to obtain power over the correctional officer or to obtain drugs or weapons from him."  *Ruffino v. Faucher,* No. 3:11-cv-297 (VLB), 2012 WL 3637636, at *1 (D. Conn. Aug. 22, 2012).

other documents that relate to complaints or disciplinary records pertaining to allegations of assault or sexual assault by Defendant, even if they did not result in disciplinary action.

###    E.    Inmate Grievances Against Defendant

Plaintiff also seeks copies of any inmate grievances against Defendant.  (Doc. 26 at 8–9.) Given Plaintiff's claims that Defendant "had a history of sexual abuse against other inmates, and engaged in a pattern and practice of abusing inmates under his supervision" (Doc. 1 at 3, ¶ 15), such documents are relevant to this litigation.  However, Plaintiff does not explain how this request is likely to lead to the discovery of information that is different from that sought in other discovery requests, including (a) Plaintiff's request for documents generated in connection with any PREA investigation that the DOC undertook in response to complaints raised against Defendant, and (b) Plaintiff's request for a copy of documents contained in Defendant's personnel file that relate to any complaints, disciplinary records, or other documents dealing with allegations of assault or sexual assault by Defendant.  Plaintiff also does not address the DOC's claim that this request is "overly burdensome and not justified for litigation involving a single event such as this [case]."  (Doc. 26 at 5.)  The DOC explains that "[f]inding grievances that are filed against individual officers would require reviewing all grievances filed under all issues that could involve officer conduct in order to determine if Defendant is even named in the grievance."  (*Id.*)

Plaintiff has not demonstrated that the balancing of the relevant factors favors production of the requested documents.  Courts have recognized the significant burden associated with collecting complaints against correctional officers when the complaints are maintained under the name of the inmate filing the complaint or grievance rather than the name of the individual correctional officer.  *See Shapard v. Attea*, No. 08-CV-6146 CJS, 2014 WL 4402200, at *3 (W.D.N.Y. Sept. 5, 2014) (where the requested records related to defendant correctional officers, the court noted a "clear trend within this Circuit" to deny production of inmate grievances filed

against defendant correctional officers "on the ground that it would be unduly burdensome due to the fact that they are cataloged by inmate and not by [DOC] staff"); *Dorsey v. New York*, No. 10-CV-744F, 2011 WL 4529115, at *1 (W.D.N.Y. Sept. 28, 2011) ("It has been repeatedly held by this court that because inmate grievances and complaints filed against DOCS employees are filed according to the inmates making the grievances or complaints, the search required to identify the DOCS employees against whom such grievances or complaints are made would be unduly burdensome and time-consuming, and that such burden would outweigh any benefits provided by the requested discovery.").

Not only is Plaintiff's request overly burdensome, it is also overbroad, as it includes no time limit or date range and no limitation regarding subject matter.  Therefore, the DOC is not required to respond to this request.

### F.    Non-Privileged Documents Concerning Plaintiff or Defendant

Finally, Plaintiff asks the Court to compel the DOC to produce copies of "any non-privileged documents concerning either the Plaintiff . . . or the Defendant."  (Doc. 24 at 9–10.)  As drafted, this request—unlimited as to timeframe and subject matter—is overbroad and not "proportional to the needs of the case, considering the importance of the issues at stake in the action [and] the amount in controversy."  Fed. R. Civ. P. 26(b)(1).  The DOC is thus not required to respond to this request.

### III.    Attorney's Fees

Plaintiff requests an award of reasonable attorney's fees incurred in attempting to gain compliance with the Subpoena to the DOC, asserting that "the [DOC's] response to the [S]ubpoena has been . . . entirely and unjustifiably deficient."  (Doc. 24 at 10.)  Plaintiff further argues that he should not have had to file a motion to compel to obtain copies of his own medical records or the portions of his "core file" that the DOC produced in late October 2021, after the

Motion to Compel was filed.  (Doc. 29 at 3.)  Plaintiff seeks an award totaling $1,687.50 for the time his attorney spent litigating issues related to the Motion to Compel.  (*Id.*)

Pursuant to Federal Rule of Civil Procedure 37(a)(5)(A), if a motion to compel discovery is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  The Rule also provides, however, that the court must *not* order this payment if the opposing party's position was "substantially justified," or if "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii)–(iii).

Although the Court has granted much of Plaintiff's Motion to Compel, the Court declines to award attorney's fees.  Based on review of the pleadings and the corresponding exhibits pertaining to this discovery litigation, the Court concludes that Plaintiff, the DOC, and Defendant participated in good faith in the discovery process and made substantially justified arguments in their briefing to the Court.  *See Wei Wang v. Jianming Shen*, Case No. 2:17-cv-00153, 2019 WL 3755259, at *8 (D. Vt. Aug. 8, 2019) (declining to award attorney's fees where "[t]he parties had good faith disagreements").  The papers attached to the briefs do not reveal any willful noncompliance with discovery obligations but rather a genuine dispute supported by facts and law. *Gade v. State Farm Mut. Auto. Ins. Co.*, Case No. 5:14-cv-00048, 2016 WL 3190655, at *4 (D. Vt. June 6, 2016) (declining to award attorney's fees where "[t]he history of the parties' discovery dispute does not reveal any willful noncompliance with discovery obligations, but rather a genuine dispute wherein each side believed that it was 'substantially justified' in its position"). It is unfortunate that judicial intervention was required for discovery to proceed in this case, but neither party bears sole responsibility for the dispute.  The Court thus declines to award attorney's fees to Plaintiff.

## Conclusion

For these reasons, Plaintiff's Motion to Compel Compliance with Subpoena *Duces Tecum* to former DOC Commissioner Baker (Doc. 24) is GRANTED in part and DENIED in part, as follows:

1. The DOC is ORDERED to produce to Plaintiff documents contained in Plaintiff's "core file" with the DOC that are dated from January 1, 2019 through January 1, 2021.

2. The DOC is ORDERED to produce to Plaintiff all documents generated in connection with any PREA investigation that the DOC has undertaken in response to complaints against Defendant.

3. The DOC is ORDERED to produce to Plaintiff copies of Plaintiff's DOC medical records that are dated from January 1, 2015 through the date of the Subpoena, including redacting and listing in a privilege log any sensitive or privileged information regarding other inmates.

4. The DOC is ORDERED to produce those documents from Defendant's personnel file that relate to any complaints, disciplinary records, or other documents dealing with allegations of assault or sexual assault by Defendant that are dated from January 1, 2019 through January 1, 2021.

5. Regarding the documents produced pursuant to Numbers 1–4, above, to the extent that the DOC believes any of these documents or portions of these documents contains confidential or privileged information (including but not limited to information regarding Plaintiff's, another inmate's, or Defendant's private medical or mental health information), the DOC may withhold the document or redact the information and concurrently produce a privilege log consisting of: (a) a description of the document withheld or information redacted, (b) the identity of the document's author, (c) the date of the document, and (d) the specific

reason for the document being withheld or information being redacted, including the privilege invoked and the grounds for the privilege. Once produced, these documents are to be examined exclusively by Plaintiff's counsel for the purpose of the pending litigation and must be handled with the strictest confidentiality. No reproductions may be made. In the event any of these documents are submitted to the Court, they will be ordered sealed if so requested. Upon the conclusion of this action, all documents produced pursuant to this Order, if any, must be returned to the DOC.

6.  The DOC is not required to respond to Plaintiff's request for copies of any inmate grievances against Defendant.

7.  The DOC is not required to respond to Plaintiff's request for copies of any non-privileged documents concerning either Plaintiff or Defendant.

8.  Plaintiff's request for attorney's fees is DENIED.

The Court ORDERS the parties to meet and confer and jointly file with the Court a revised stipulated discovery schedule that accounts for the time required to gather, produce, and review the subject documents.

Dated at Burlington, in the District of Vermont, this 3rd day of August 2022.

*/s/ Kevin J. Doyle*_____
Kevin J. Doyle
United States Magistrate Judge
