UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2024 NOV 19  AM 10:00

CLERK

BY_____
DEPUTY CLERK

JUSTIN RUSSELL,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )        Case No. 5:20-cv-184
                                  )
JASON SCOTT,                      )
                                  )
        Defendant.                )

**OPINION AND ORDER**
**(Docs. 48, 58)**

Plaintiff Justin Russell has sued defendant Jason Scott under multiple federal and state causes of action arising out of a February 2019 "medication call" at which Russell was a Vermont pretrial detainee receiving Suboxone treatment, and where Scott, a corrections officer, allegedly reached down Russell's pants "and grabbed and squeezed and twisted his penis." (Doc. 1 ¶¶ 4–8.) Russell further alleges that Scott then told Russell, "How'd you like that, mother fucker?," slammed a door on Russell's arm, and later—in an effort to cover up his actions—falsely accused Russell of diverting medication during the medication call. (*Id.* ¶ 10–13.) Russell, who had been released from Vermont Department of Corrections custody at the time he filed his Complaint, seeks compensatory and punitive damages. (*Id.* at 6.)

Scott filed a Motion for Summary Judgment seeking dismissal of all claims against him. (Doc. 48.) The Magistrate Judge issued a Report and Recommendation (R&R), recommending that the court grant the motion with respect to Plaintiff's claims of intentional infliction of emotional distress (IIED) (Count II) and malicious prosecution (Count III), but that the court should deny the motion with respect to Plaintiff's claim under 42 U.S.C. § 1983 for sexual assault in violation of the Fourteenth Amendment's Due Process Clause (Count IV), and with

respect to a state-law battery claim arising from the allegations of sexual assault (Count I).

(*See* Doc. 58.) Defendant has filed objections to the R&R insofar as it recommends denial of

those aspects of the Summary Judgment motion. (Doc. 61.) Plaintiff has not filed any objection

to the R&R but has filed a response requesting that the court overrule Defendant's objections.

(Doc. 62.)

For the reasons discussed below, the R&R is ADOPTED and Defendant's Motion for

Summary Judgment is GRANTED IN PART and DENIED IN PART.

## Background

The parties generally do not challenge the R&R's statement of the material facts,

reproduced here:

> In February 2019, Russell was a pretrial detainee in the custody of the
> Vermont Department of Corrections (DOC) at SSCF in Springfield, Vermont. He
> was participating in a medication assisted treatment (MAT) program, which
> involved his regular receipt of Suboxone during scheduled "medication pass[es]"
> at the facility. On the morning of February 11, Scott was the SSCF corrections
> officer on duty during Russell's medication pass. When Russell entered the room
> where the medication pass was to occur, Scott asked Russell to remove his hat from
> his head per SSCF policy, and Russell complied. A nurse administered Suboxone
> to Russell, and Scott confirmed that the medication was under Russell's tongue.
> Pursuant to prison policy, Russell was then seated for ten minutes to allow the
> Suboxone to dissolve. According to Scott, as Russell waited, another inmate who
> had just received his medication walked in front of Russell and stopped for a
> moment, preventing Scott from seeing either the inmate's or Russell's face. Russell
> contests this fact, stating that it "is complete utter crap" that "somebody was . . . in
> [Scott's] way of seeing me" during the medication pass. Notwithstanding Russell's
> disagreement with this fact, Scott claims that his momentary inability to see Russell
> and the other inmate's faces during the medication pass caused him to suspect that
> Russell was attempting to smuggle Suboxone into SSCF.
>
> After waiting the required ten minutes, Russell stood up for his mouth
> check, placing his hat in the waistband of his sweatpants. Scott conducted the mouth
> check, confirming that Russell's mouth appeared to be clear of medication.
> According to Scott, he then removed the hat from Russell's waistband and told him
> to return to his unit. Scott further claims that, after telling Russell to return to his
> unit, he inspected Russell's hat and found what appeared to be crushed medication
> in it, resulting in Scott filing an Incident Disciplinary Report against Russell for
> misuse of prescribed medication. After a hearing a few weeks later, Russell was

2

found not guilty based on Scott's failure to retain chain of custody over the alleged contraband in Russell's hat.

Russell's version of the facts, from after the point of Scott conducting the final mouth check of Russell, is quite different. First, Russell denies that there was any contraband in his hat, arguing that Scott filed the Incident Disciplinary Report to try to cover up his own unlawful conduct. Further, Russell claims that after completing his final mouth check, Scott told Russell to stop. When Russell stopped and turned around to face Scott, Scott grabbed the hat that Russell had tucked into his waistband, and then—in plain view of at least two other inmates—reached into Russell's pants and grabbed, squeezed, and twisted Russell's penis. According to Russell's version of events, Scott then told Russell to give him the hat, despite Scott already having the hat in his possession. Scott's handling of Russell's penis in front of other inmates caused Russell a great deal of pain and embarrassment, and he reacted by quickly pulling away from Scott, and yelling and cursing at Scott in a hostile manner. According to Russell, as he walked back towards his unit in compliance with Scott's order, Scott "approached [Russell], his face contorted with anger, and stated 'How'd you like that, mother fucker?'" Scott then slammed a heavy metal door on Russell's right arm, injuring Russell.

Russell claims that he had a rug burn and a red mark on his penis for about a week after the sexual assault, and then experienced scabbing on his penis. He further contends that he had a big bruise and broken blood vessels on his arm as a result of the door-slamming incident. Though Russell testified at his deposition that he asked to see a nurse on the date of the alleged sexual assault and door-slamming incident, he did not receive any medical attention for his physical injuries, and they resolved within about a week.

(Doc. 58 at 2–4 (footnotes and citations omitted).) Relevant additional materials from the record are discussed below.

### Standard of Review

Where a magistrate judge enters a recommended disposition on a dispositive motion, a district judge must determine "de novo" any part of the recommendation to which a party properly objects. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). "The court may adopt those portions of the [R&R] to which no objection is made as long as no clear error is apparent from the face of the record." *United States v. Shores*, No. 17-cr-00083, 2024 WL 489313, at *10 (D. Vt. Feb. 8, 2024) (alteration in original; quoting *Green v. Dep't of Educ. of City of N.Y.*, No. 18 Civ. 10817,

3

2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020)). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Cullen*, 194 F.3d at 405.

## Analysis

The parties do not challenge the R&R's analysis of the claims in Counts II and III, or of the excessive-force aspect of the § 1983 claim in Count IV. The court finds no clear error in the R&R's discussion of those claims and concludes that Defendant is entitled to summary judgment on each of those claims for the reasons stated in the R&R.

As explained in the R&R, the essential elements of the § 1983 claim in Count IV are that: (1) the defendant "acted under the color of state law" and (2) the plaintiff "suffered a denial of [his] constitutional rights" as a result. *O'Mara v. Town of Wappinger*, 485 F.3d 693, 700 (2d Cir. 2007) (citing *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)). The relevant constitutional rights in this case for a state pretrial detainee such as Russell are found in the Due Process Clause of the Fourteenth Amendment. Before the Supreme Court issued its decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), courts analyzed such claims with reference to the Eighth Amendment framework for claims of sexual abuse by prison officials against convicted prisoners. *See Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) ("Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment."). That Eighth Amendment framework requires the plaintiff to establish both "that the defendant acted with a subjectively sufficiently culpable state of mind" and that "the conduct was objectively harmful enough or

4

sufficiently serious to reach constitutional dimensions." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (internal quotation marks omitted).

In *Kingsley*, the Supreme Court concluded that "excessive force claims brought under the Fourteenth Amendment do not require the same subjective intent standard as excessive force claims brought under the Eighth Amendment." *Darnell v. Pineiro*, 849 F.3d 17, 33 (2d Cir. 2017). That ruling "undercut the reasoning in *Caiozzo*," *id.*, and the Second Circuit has overruled *Caiozzo* "to the extent that it determined that the standard for deliberate indifference is the same under the Fourteenth Amendment as it is under the Eighth Amendment." *Id.* at 35. But because *Kingsley* concerned excessive-force claims, as opposed to sexual abuse claims, it is "'not yet clear' whether the standard for a pretrial detainee's sexual abuse claim should be analyzed under *Kingsley*'s objective standard or the Eighth Amendment two-prong standard." *Mims v. Laprey*, No. 24-cv-238, 2024 WL 3090481, at *5 (D. Conn. June 21, 2024) (quoting *Johnson v. Cook*, No. 19-CV-1454, 2021 WL 2741723, at *11 (D. Conn. July 1, 2021)); *see also, e.g.*, *Lynch v. County of Herkimer*, No. 20-CV-63, 2022 WL 866745, at *9 (N.D.N.Y. Feb. 16, 2022), *report-recommendation adopted*, 2022 WL 866253 (N.D.N.Y. Mar. 23, 2022).

Evaluating both the Eighth Amendment and Fourteenth Amendment standards, the R&R concludes that "Russell has adduced sufficient evidence to raise a dispute of material fact under either standard." (Doc. 58 at 18.) The R&R therefore recommends denying the Motion for Summary Judgment as to the sexual assault claim. (*Id.* at 31.) The R&R further recommends that the Complaint be amended to substitute a state-law battery claim in place of the assault claim in Count 1, and that summary judgment should be granted to Defendant on the battery claim "arising from the door-slamming incident" but denied on the battery claim insofar as it arises "from the allegations of sexual assault." (*Id.* at 38.) Finally, as relevant here, the R&R

5

concludes that "factual issues preclude summary judgment in favor of Scott on the basis of qualified immunity with respect to Russell's sexual assault and battery claims." (*Id.* at 44.)

Defendant objects to the portions of the R&R recommending denial of summary judgment for the defense on claims based on the alleged sexual assault. (Doc. 61 at 1.) Defendant asserts that the R&R's conclusions on those issues are erroneous because the R&R:

> 1) fail[s] to fully credit the context in which the incident occurred, 2) ignore[s] portions of plaintiff's testimony, particularly that the contact lasted only "a couple seconds," and crediting his conclusory denials, 3) [relies] on district court opinions involving more egregious conduct and that postdate the incident, and 4) find[s] that there are material factual disputes that preclude qualified immunity.

(*Id.*) Applying the "de novo" standard, the court considers each of those four issues below. Like the R&R, the court begins with the two-prong Eighth Amendment standard; if Plaintiff has adduced sufficient evidence under that more demanding standard, then he likely also meets *Kingsley*'s objective standard.

## I.    Context of the Incident

"In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford*, 796 F.3d at 247. As noted in the R&R, Defendant maintains that the alleged unwanted touching in this case "was incidental to a legitimate pat down." (Doc. 58 at 29.) Defendant asserts that the R&R did not sufficiently account for the context of the incident as involving legitimate official duties—such as a pat down—to prevent the smuggling of controlled substances in correctional facilities. In support, Defendant contends that the R&R improperly summarized the incident as follows:

> a corrections officer grabbing, squeezing, and twisting a pretrial detainee's penis *for no legitimate law enforcement purpose*, in front of other detainees/inmates, to the point of causing considerable pain and humiliation to the detainee, followed by

the officer making a degrading comment to the detainee and slamming a door on
him.

(Doc. 58 at 28 (emphasis added).)

Defendant's argument on this point is not persuasive. The R&R does not conclusively

determine that Scott had "no legitimate law enforcement purpose," but instead states only that

this would be the conclusion about Scott's alleged contact with Russell's genitalia if, as required

by Rule 56, the court "[r]esolv[ed] all ambiguities and [drew] all factual inferences in favor of

Russell." (*Id.*) Indeed, the R&R expressly states that "there are triable issues of material fact as

to whether Scott reasonably believed Russell was diverting medication and thus whether Scott's

alleged contact with Russell's penis was justified by a legitimate penological or law enforcement

purpose." (*Id.* at 30.)

Similarly, the background facts recited in the R&R recognize these legitimate law

enforcement interests. The R&R specifically notes that the facility had policies in effect

regarding the administration of the Suboxone. (*Id.* at 2.) Those policies—including the

requirements that patients remain under observation and that they submit to mouth checks—

support and are consistent with the legitimate penological interest in preventing the smuggling of

controlled substances. The R&R also takes judicial notice of a DOC policy (*see* Doc. 58 at 25

n.9) that expressly recognizes that "[c]ontraband in correctional facilities presents a myriad of

safety and security concerns." State of Vt., Agency of Hum. Servs., Dep't of Corr., "Searches,"

No. 409.01 at 1 (effective Sept. 1, 2015) [hereinafter "Policy 409.01"],

https://outside.vermont.gov/dept/DOC/Policies/Searches%20Directive.pdf

[https://perma.cc/AS8D-729F].

It is true that the R&R does not discuss or cite all of the potentially relevant evidence on

this point. Some of the additional evidence to which Defendant refers includes Plaintiff's

concession at his deposition that the smuggling of Suboxone presents a threat to the orderly operation of a correctional facility. (Doc. 48-4 at 103.) Plaintiff also conceded that Suboxone has value in such facilities. (Doc. 48-3 at 10.) And, according to Plaintiff's deposition testimony, he has chronic back pain for which the facility would not ordinarily prescribe "strong" medication, so he falsely told DOC personnel that he was a past opioid user in order to get on the MAT program and have access to Suboxone for his back pain. (*Id.* at 8.)

But the fact that the R&R did not cite these particular portions of evidence does not mean that the Magistrate Judge did not consider them, nor does it prove that the R&R failed to properly consider the context of the incident. The court concludes that the R&R does not ignore the security risks posed by the smuggling of controlled substances in correctional facilities or the legitimate law enforcement purposes justifying searches to detect and prevent such smuggling. To the extent that the additional context cited by the defense is probative, the court has considered it here as part of its de novo review.

## II.    Plaintiff's Testimony

Recognizing the requirements of Fed. R. Civ. P. 56, Defendant in this context does not attempt to contest Plaintiff's allegation that Defendant reached into Plaintiff's pants and touched Plaintiff's penis. (Doc. 61 at 4.)[1] However, Defendant repeats the R&R's observation that much of Plaintiff's evidence consists of his own deposition testimony and interrogatory responses and asserts that the R&R gives "improper weight" to Plaintiff's "conclusory allegations and denials." (*Id.*) Defendant urges the court to scrutinize five points of Plaintiff's evidence as summarized on page 23 of the R&R. (Doc. 58 at 23.) The court reviews those points below.

---

[1] As noted in the R&R, Defendant "denies that he grabbed Russell's penis, stating at his deposition that he does not recall coming into contact with Russell's body in any manner when he grabbed Russell's hat." (Doc. 58 at 3 n.2.)

8

First, however, the court restates the R&R's observation that, on summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (Doc. 58 at 7 (quoting *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017).) Indeed, in the context of a Rule 56 motion, "a district court generally 'should not weigh evidence or assess the credibility of witnesses.'" *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) (per curiam) (quoting *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)). But, as Defendant points out, there is an exception:

> [I]n the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," . . . and thus whether there are any "genuine" issues of material fact, without making some assessment of the plaintiff's account.

*Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

Here, the R&R recognizes that Plaintiff's evidence consists "primarily . . . of his own deposition testimony and interrogatory responses." (Doc. 58 at 22.) The R&R also recognizes at least one instance where Plaintiff's testimony is contradictory. (*See id.* at 24 (discussing Russell's inconsistent testimony as to whether Scott took possession of Russell's hat before or after the alleged touching).) For the reasons discussed below, however, the court is unpersuaded that this is the exceptional case where it would be proper to discredit Plaintiff's evidence on summary judgment.

## A.    Blocked View During the Medication Pass

Scott's testimony is that, during the medication pass, he "observed another inmate walk in front of him, stand for a—a moment, and I could not see Mr. Russell or the other inmate's face." (Doc. 48-5 at 17.) The other inmate was standing with his back to Scott. (*Id.*) Scott

knew that the other inmate had just received his medication, and Scott testified that "[i]t crossed my mind" that the other inmate "was spitting out his medication" for Russell to take.  (*Id.*)

In his testimony, Russell stated that Scott's report "says that somebody was like in his way of seeing me, and he used that as probable cause to start all of this, which is complete utter crap, if you ask me."  (Doc. 49-4 at 26.)  Plaintiff asserts—and the R&R apparently accepts— that this statement is sufficient to create a genuine dispute as to whether another inmate did in fact block Scott's view of Russell during the medication pass.  The court disagrees on this point.

The court reads Russell's statement as an opinion that a blocked view could not be a sufficient basis for a search or otherwise justify Scott's alleged conduct.  Indeed, Russell went on to testify that, in his view, Scott had no basis to conclude that, because "somebody was standing in front of him, . . . that's enough cause to . . . sexually assault somebody."  (*Id.* at 27.) Meanwhile, Plaintiff has cited no evidence specifically asserting that no other inmate blocked Scott's view of Russell during the medication pass.  Nor has the court's review of the record revealed any such evidence.  There is generalized testimony that Russell disagrees with Scott's version of events on the date in question.  (*See* Doc. 49-3 at 12 (asserting that Scott's incident report is not accurate).)  But that general assertion is insufficient to counter Scott's testimony on this specific point.

### B.    The Mouth Check and Russell's Hat

Russell asserts that there are two other reasons why, in his view, Scott lacked any basis to conduct a pat search of his groin area.  First, Russell cites the undisputed evidence that he passed the mouth check after the ten-minute waiting period.  Second, Russell testified that Scott "had the power of taking the hat in the beginning" to search the hat for suspected diverted medication, and if Scott had done so at the outset "none of this would have happened."  (Doc. 49-4 at 10.)

10

As discussed in the R&R, Russell has submitted arguably inconsistent testimony as to whether Scott conducted the pat search before or after taking Russell's hat. (*See* Doc. 58 at 24.)  Russell cannot "create a material issue of fact by disputing his own prior sworn testimony." *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 201 n.45 (S.D.N.Y. 2009).  At the same time, the R&R notes that there is competing testimony as to whether there was contraband in the hat. (Doc. 58 at 3; *see also* Doc. 49-1 ¶ 18 and evidence cited.)

The court concludes, however, that any dispute as to any of these points about Russell's hat is not material as to whether Scott had a basis to conduct a pat search.  As noted above, there is no evidence to rebut Scott's testimony that another inmate blocked Scott's view of Russell during the medication call and that Scott suspected that the other inmate was spitting out his medication for Russell to take.  And even if Scott's first action was to search the hat, that would not have eliminated the basis for a pat search. *Cf. Shaw v. Prindle*, 661 F. App'x 16, 19 (2d Cir. 2016) (summary order) (even relinquishment of contraband "does not necessarily obviate the need for a search" because the suspect "easily could have hidden additional contraband on his person").

Moreover, as noted in the R&R (Doc. 58 at 25), DOC policy permits staff to conduct a pat search of a detainee "at any time," including when an officer suspects a detainee of diverting medication.  Policy 409.01 at 3.  The court therefore declines to adopt the R&R's conclusion that there is a triable issue "as to whether Scott reasonably believed Russell was diverting medication." (Doc. 58 at 30.)  The court concludes instead that, as a matter of law, Scott had a reasonable basis to conduct a pat search for diverted medication.

11

## C.    Manner of the Search

Scott's testimony is that he did not touch Russell with his hands at any time during the February 11, 2019 incident. (Doc. 48-5 at 30.) However, as noted above, in light of the requirements of Rule 56, Scott is not contesting Plaintiff's testimony that Defendant reached into Plaintiff's pants and touched Plaintiff's penis. (Doc. 61 at 4.) Russell's testimony is that Scott "squeezed," "yanked," and "twisted" his penis. (Doc. 49-4 at 10.) Scott suggests that the court should reject that evidence because it consists primarily of Russell's own testimony. (*See* Doc. 61 at 6.) The court declines that invitation for two reasons. First, Russell's testimony on this particular point does not contradict any of his other testimony.

.      Second, Russell has presented some evidence tending to support his testimony. As noted in the R&R, two other inmates who were present at the medication pass have submitted affidavits stating that they saw Scott's hand "go into Mr. Russell's pants and [grope] his penis" and that it "look[ed] like" Scott "squeezed." (Doc. 49-8 at 3; Doc. 49-9 at 4.) Scott contends that those statements establish only that Scott "put his hand in Plaintiff's pants" because "[w]hat he did with his hand was not visible." (Doc. 61 at 6.) The court accepts that the other inmates would not have been able to see through Russell's pants, but that fact does not prove that eyewitnesses could not observe other details from which to draw their conclusions. The court therefore adopts the R&R's conclusion (Doc. 58 at 25) that the other inmates' testimony weighs against granting summary judgment.

In addition, the court agrees with the R&R that, resolving all ambiguities and granting all inferences in Russell's favor, Scott did not perform a "routine pat down." (Doc. 58 at 23.)[2]

---

[2] The R&R correctly draws a distinction between a pat down and a strip search, and correctly declines to credit Russell's unsupported testimony that, upon suspicion of contraband, policy or procedure required Scott to call a supervisor and order a strip search. (Doc. 58 at 25.)

12

DOC policy defines a "pat search" as "[a]n inspection of a person using the hands that does not require the removal of clothing other than a coat, hat, or footwear." State of Vt., Agency of Hum. Servs., Dep't of Corr., "Interim Revision Memo Inmate Pat Searches," (Sept. 13, 2010), https://outside.vermont.gov/dept/DOC/Policies/Inmate%20Pat%20Searches%20Interim%20Me mo.pdf [https://perma.cc/FP94-B6Q8]. DOC policy also states that "[a]ll searches shall be carried out in a professional manner, where the dignity of the person subjected to the search is maintained" and that "[s]earches of all persons shall be conducted in a manner that protects their privacy, confidentiality, and personal dignity to the extent consistent with this policy." Policy 409.01 at 1, 6. Those policies indicate that a routine pat frisk should be conducted over the clothing. Russell's testimony is that Scott reached inside Russell's pants and used his "bare hands" to handle Russell's penis. (Doc. 49-4 at 10.)

The defense relies on the following colloquy from Russell's March 2023 deposition to make some additional points:

> Q.    What was sexual about the fact that he touched your penis?
> A.    Other than the fact that he completely caught me off guard and took it upon himself to enter my space when he had no right to do so. That's what makes it unwanted. And not only that—
> Q.    So unwanted is different than sexual.
> A.    That's what makes it a sexual assault, sir, is when someone's not willing and unwanting.
> Q.    So to you, it's sexual simply because he touched [your] penis, which is a sexual organ?
> A.    Um-hum.
> Q.    And you didn't want it?
> A.    Absolutely. And it's not even just [touching] it. Like I said, sir, he—he had it in his hands for what felt like a lifetime. Honestly, I wouldn't say it was longer than like seven to 10 seconds—not even 10 seconds. Five to seven seconds maybe. It felt like forever. But I would probably give it a time frame of just a couple seconds.

(Doc. 48-4 at 41–42.)

First, citing Russell's testimony that the unwanted physical contact lasted "just a couple seconds," the defense faults the R&R for "discount[ing] the Plaintiff's own testimony regarding Defendant Scott's alleged contact with his genitals." (Doc. 61 at 7.) The court is unpersuaded. Russell's testimony about the span of time is not inconsistent with his other testimony and does not negate any element of his claim.

Second, the defense construes Plaintiff's testimony as establishing that "the only sexual aspect of the incident is that Plaintiff didn't want to be touched." (Doc. 61 at 8.) As stated above, "[i]n determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Crawford*, 796 F.3d at 247. The court rejects Defendant's suggestion that the quoted portion of Plaintiff's testimony concedes or proves that the contact was incidental to legitimate official duties.

### D.    "How'd You Like That"

The defense challenges Russell's assertion that Scott said "How'd you like that, mother fucker" after the unwanted contact. According to the defense, "the content of Defendant Scott's statement is supported solely by Russell's own testimony." (Doc. 61 at 6.) The R&R notes that Russell has presented evidence from witnesses who stated that they saw Scott "whisper something" to Russell after the alleged sexual assault. (Doc. 58 at 23.) The defense is correct that the *content* of the alleged statement at issue appears only in Russell's testimony. Nevertheless, the court cannot conclude that this is the rare case where a jury could not possibly believe Russell's account.

The court is not persuaded that Russell's testimony on this point is contradictory just because Russell did not mention the alleged statement in the colloquy (quoted above) about what he thought was "sexual" about the unwanted contact. That testimony was about the physical contact, not Scott's subsequent statements. In any case, the court does not require Russell to articulate all of his potential legal arguments in the course of that testimony.

The defense asserts that the content of Scott's alleged statement "is not overtly sexual." (Doc. 61 at 6.) Although Scott's alleged statement might be tangentially related to sex insofar as it invokes an incest metaphor, the court notes that "more often than not, when these expressions are used . . ., their use has no connection whatsoever with the sexual acts to which they make reference . . . . Ordinarily, they are simply expressions of animosity or juvenile provocation . . . ." *Johnson v. Hondo, Inc.*, 125 F.3d 408, 412 (7th Cir. 1997). Still, the R&R concludes, and the court agrees, that Scott's alleged statement, if credited, constitutes some evidence that Scott's alleged conduct was "gratuitous, sexually motivated, or done to humiliate Russell." (Doc. 58 at 25; *see also id.* at 42.) As the Second Circuited has stated, "demeaning comments" can support a conclusion that an officer undertook a search "in order to arouse himself, humiliate [the searched person], or both." *Crawford*, 796 F.3d at 259.

### E.     The Door-Slamming Incident

In discussing the excessive-force claim, the R&R concludes that "Scott's act of forcibly closing the door as Russell walked through it was objectively reasonable." (Doc. 58 at 16.) At the same time, the R&R lists the door-slamming incident as part of the evidence weighing against granting summary judgment on the constitutional sexual-assault claim. (Doc. 58 at 25.) Defendant's objection to the R&R does not specifically challenge that conclusion. For present purposes, it is sufficient to conclude that, even without the door-slamming incident, the other

15

evidence is sufficient to survive the summary judgment motion for the reasons stated in the R&R.

### III.    Caselaw

After concluding that the evidence is sufficient to withstand summary judgment on the constitutional sexual-assault claim, the R&R states that "[c]ourts in this Circuit have denied summary judgment in similar factual circumstances." (Doc. 58 at 25–27 (citing cases).) Defendant asserts that he "wholly disagrees that these cases present similar facts." (Doc. 61 at 9.) Plaintiff concedes that "the line of referenced cases vary to some degree in the severity of the conduct alleged," but maintains that "many of the cases found viable claims based on facts that are similar to those that are presented here." (Doc. 62 at 5.)

At a general level, most of the cases cited involve allegations of staff-on-inmate sexual abuse. None of the cases involve exactly the same facts as this case. But the court finds no error in the R&R's identification of these cases, at least insofar as they demonstrate the analytical approach to these types of cases.

### IV.    Qualified Immunity

Finally, Defendant challenges the R&R's conclusion that "factual issues preclude summary judgment in favor of Scott on the basis of qualified immunity with respect to Russell's sexual assault and battery claims." (Doc. 58 at 44.) But that argument relies almost entirely on arguments that the court has already rejected, above. (*See* Doc. 61 at 13.) The remainder of Defendant's argument consists of his assertion that "the law establishes that a one-time, brief touching, even if it had a sexual element, does not rise to constitutional dimensions" and that "where there is no sexual element, a one-time touching of genitalia does not violate clearly established law." (*Id.* at 13–14.) Plaintiff responds that "[w]hat the cited cases actually stand for

16

is the proposition that a plaintiff who fails to allege improper purpose fails to state a constitutional sexual assault claim." (Doc. 62 at 7.)

As discussed in the R&R, the qualified immunity analysis involves inquiries into whether there was a violation of the plaintiff's "clearly established" rights and whether it was objectively reasonable for the defendant to believe that his actions did not violate any such right. (Doc. 58 at 39.) The court rejects Defendant's suggestion that any clearly established law at the time of the February 2019 incident indicated that a "one-time, brief touching" could never violate the Constitution. Writing to "clarify" the rule in *Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997), the Second Circuit stated in its 2015 *Crawford* decision: "A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or to humiliate the inmate, violates the Eighth Amendment." *Crawford*, 796 F.3d at 254. That law put the focus on the purpose for the conduct and on the officer's intent, not the number of incidents or how "brief" the contact might be.

## Conclusion

The court concludes that, as a matter of law, Scott had a reasonable basis to conduct a pat search for diverted medication. That conclusion does not alter the R&R's recommended disposition of Defendant's Motion for Summary Judgment, and the court otherwise ADOPTS the Report and Recommendation (Doc. 58). Accordingly, the Motion for Summary Judgment (Doc. 48) is GRANTED with respect to the Eighth Amendment claim, the Fourteenth Amendment excessive-force claim, and the state-law IIED and malicious-prosecution claims. The Motion is DENIED with respect to the constitutional sexual assault claim. The court grants

leave to amend the Complaint to substitute a state-law battery claim for the assault claim in

Count I, and DENIES the Motion for Summary Judgment with respect to Count I.

Dated at Burlington, in the District of Vermont, this 19th day of November, 2024.

/s/ Geoffrey W. Crawford

District Judge
United States District Court